IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CATHERINE CONRAD,

                                                                              OPINION AND ORDER

                  Plaintiff,

                                                                               11-cv-305-bbc

      v.

JAMES BENDEWALD, KATHLEEN BENDEWALD,
MARIA VEDRAL and SILVER EDGE SYSTEMS SOFTWARE, INC.,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Catherine Conrad has filed a proposed complaint arising out of a "singing telegram performance" she gave in March 2011. Because plaintiff is proceeding under 28 U.S.C. § 1915, I must screen her complaint to determine whether it states a claim upon which relief may be granted. Having reviewed the complaint, I conclude that it does not include enough information to provide fair notice of her claims, as required by Fed. R. Civ. P. 8. The only federal claim plaintiff asserts is for copyright infringement, but she includes no allegations about many of the requirements for that claim. Accordingly, I will give plaintiff an opportunity to amend her complaint to include the necessary information.

      In addressing any pro se litigant's complaint, the court must read the allegations of

1

the complaint generously. Haines v. Kerner, 404 U.S. 519, 521 (1972). In her complaint, plaintiff fairly alleges the following facts.

ALLEGATIONS OF FACT

On February 23, 2011 defendant Maria Vedral hired plaintiff for a "singing telegram performance" to take place on March 4, 2011. On March 2, Vedral's assistant told plaintiff that they would be videotaping the performance. Plaintiff told the assistant that, "if the videotaped was used, they would be responsible for releases and fees to use Catherine Conrad's image, voice and likeness and for use of any copyrighted material including music." The same day, she repeated this information to defendant James Bendewald, the person Vedral hired to videotape the performance.

On the day of the performance, plaintiff told Bendewald that, "since [Vedral] did not get permission to use her image, . . . he was only to videotape the reactions of the singing telegram recipient." She told him that "her image, voice, likeness and music were all copyrighted."

After the performance, plaintiff asked Vedral how she intended to use the videotape. (Plaintiff does not include any allegations about what was videotaped.) Vedral said it would be used as "a sales tool" on a website for "Silver Edge Consulting" and that a copy would be given to the recipient of the telegram.

2

Plaintiff and her business partner met with Bendewald to view the tape. After doing so, plaintiff's business partner told Bendewald that "he could get into trouble by videotaping the footage of the employees that day, the compan[y's] patents on the wall and all their prototypes." (Again, plaintiff does not include any allegations about the extent to which she appeared on the videotape.)

After the meeting, Bendewald told Vedral that "she could produce her 'ad' without any music from" plaintiff. Plaintiff sent Vedral "a copy of the Right of Publicity statute and the fees for the use of Catherine Conrad's image and voice and the fee for the copyrighted music/song that was used in the performance." In response, Vedral told plaintiff that she was not going to use her image and voice on the website.

On March 7, plaintiff again met with Bendewald. She attempted to "discuss the damages James Bendewald had caused when he interfered with [her] business by emailing Maria Vedral, informing her that she didn't have to use Catherine Conrad's image, voice and music." Bendewald asked plaintiff to leave.

Over the next few weeks, plaintiff attempted to contact Bendewald again "to resolve the matter," but he did not respond to her letters or phone calls.

OPINION

Plaintiff identifies three legal theories in her complaint: (1) "right of publicity"; (2)

3

"copyright infringement"; and (3) "willful intent." In addition, her allegations suggest that she believes she has a claim for tortious interference with a prospective contract, although she does not explicitly invoke that claim.

Because copyright is the only theory plaintiff asserts under federal law, I will address that first. A plaintiff alleging copyright infringement must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications Inc. v. Rural Telephone Servive Co., 499 U.S. 340, 361 (1991). Material may be protected by copyright if it is an "original wor[k] of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist Publications, Inc., 499 U.S. at 345. "An individual 'copies' another's work for purposes of copyright law if he plays it publicly or distributes copies without the copyright owner's authorization." Janky v. Lake County Convention And Visitors Bureau, 576 F.3d 356, 361 (7th Cir. 2009).

Plaintiff has not included enough information in her complaint to allow a determination whether she states a claim under this standard. Aspects of plaintiff's identity, such as her image and voice, are not entitled to protection under the copyright laws. Toney v. L'Oreal USA, Inc., 406 F.3d 905, 910 (7th Cir. 2005) ("A person's likeness—her

4

persona—is not authored and it is not fixed."); Midler v. Ford Motor Co., 849 F.2d 460, 462 (9th Cir. 1988) ("A voice is not copyrightable. The sounds are not 'fixed.' What is put forward as protectible here is more personal than any work of authorship."). Music and lyrics may be protected, e.g., BMG Music v. Gonzalez, 430 F.3d 888 (7th Cir. 2005), but plaintiff does not say whether she was performing any original work, or if she was, whether she has registered her copyright, which is a condition precedent of bringing a claim under the Copyright Act. 17 U.S.C. § 411(a); Chicago Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 631 (7th Cir. 2003) ("[A]n application for registration must be filed before the copyright can be sued upon.").

Further, plaintiff does not allege that any of the defendants have distributed copies of her song or played it publicly. In fact, plaintiff is strangely silent in her complaint regarding whether any of the defendants even *recorded* her song. She says that she instructed Vedral and Bendewald not to do so and that she viewed the videotape after Bendwald recorded it, but she does not allege that her song was on the videotape she viewed. Rather, she makes the irrelevant observation that the recording may have included images that third parties might find objectionable. Although it may be that plaintiff omitted allegations about any recording or copying of her music because it did not occur, I will give plaintiff an opportunity to file an amended complaint to clarify what happened.

If plaintiff chooses to file an amended complaint, it should include the following

information: (a) whether she is the author of the music or lyrics that she performed; (b) whether she has registered her copyright, as required by 17 U.S.C. § 411(a); (c) whether defendant Bendewald videotaped any of her performance of material protected by copyright; and (d) whether any of the defendants distributed the tape or played it publicly. In addition, if plaintiff includes Kathleen Bendewald as a defendant, plaintiff should explain she is doing so. Plaintiff identifies Kathleen Bendewald as the spouse of James Bendewald, but she includes no allegations of wrongdoing by Mrs. Bendewald.

If plaintiff chooses this route, she must file an amended complaint that *replaces* the original complaint. That is, plaintiff should not file a supplement to the original complaint, but must start from scratch and file a complaint that includes all the information needed to state a claim. In other words, the amended complaint must tell plaintiff's entire story on its own. Plaintiff should not refer to the original complaint or any other documents. If plaintiff believes any information in the original complaint or attachments is important to her claims, she should repeat that information in the amended complaint.

I will stay a decision on plaintiff's state law claims until I determine whether plaintiff may proceed with her copyright claim. Because plaintiff does not allege that she is a citizen of a different state than each of the defendants or that the amount in controversy is greater than $75,000, I cannot exercise jurisdiction over her state law claims under 28 U.S.C. § 1332. Under 28 U.S.C. § 1367, a federal district court may decide state law claims if they

6

are related to federal claims in the same suit. However, when the federal claims drop out of the lawsuit early in the proceedings, the general rule is that the district court should dismiss the state law claims so that they can be refiled in state court. E.g., Segal v. Geisha NYC LLC, 517 F.3d 501, 506 (7th Cir. 2008). Accordingly, it would be improper to consider plaintiff's state law claims before I decide whether plaintiff is going forward with any federal claims.

ORDER

IT IS ORDERED that plaintiff Catherine Conrad's complaint is DISMISSED WITHOUT PREJUDICE for failing to provide fair notice of her claim for copyright infringement. Plaintiff may have until May 26, 2011, to file an amended complaint that complies with this order. If plaintiff fails to respond by May 26, I will dismiss the complaint as to the copyright claim for plaintiff's failure to state a claim upon which relief may be granted and I will dismiss the state law claims without prejudice to plaintiff's refiling them in state court.

Entered this 11th day of May, 2011.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judgeba